JAMES R. FORTENBERRY *v.* THE STATE.

1. CRIMINAL LAW.  *Clerical errors.*
   J. R. F. was indicted for the murder of J. N. H.  In the copy of the indictment furnished the accused, his name was written J. "B." F., and in the clerk's certificate attached thereto, the copy was certified to be of an indictment against J. B. F., for the murder of "R." N. H.  And in the copy of the special *venire* furnished the accused, the names of some on the list were marked as served with the writ, which were not so marked in the original, and some marked as served in the original were not so marked in the copy.  *Held*, that these clerical errors could not prejudice the accused, and it was not error in the court to refuse a continuance on account of them.

2. SAME.  *Competency of juror.  Scruples against capital punishment.*
   In impaneling the jury in a capital case, it is not error for the court to reject as incompetent one who states that he has conscientious scruples against capital punishment.

3. SAME.  *Practice.  Impaneling jury.*
   In a trial for murder, after the special *venire* has been exhausted in impaneling the jury, if there be no regular *venire* for the week, nor talesmen, it is not error to summon by-standers to complete the jury.

4. PRACTICE.  *Instructions.*
   An instruction, though correctly expressing the law, may be refused by the court when it is substantially contained in others given.  And instructions not applicable to the facts in the case should be refused.

5. CRIMINAL LAW.  *Homicide.  Erroneous instructions.*
   The jury were instructed that the assault in resisting which a man may kill his assailant "must be an assault within striking distance;" and that if the jury believe from the evidence that, "at the time of the shooting, the deceased was not in striking distance of the prisoner, by any weapon shown to be in his hand, they must find the accused guilty."  *Held*, that the charge was erroneous.

6. SAME.   *Self-defense.*
 A man assaulted, or about to be assaulted, with a deadly weapon is not required
      to wait until his assailant gets upon equal terms with himself before he can
      lawfully slay him.   But he may justly use the advantage which his own inno-
      cence and his assailant's rashness have given.

ERROR to the Circuit Court of Rankin County.

Hon. A. G. MAYERS, Judge.

The plaintiff in error, James R. Fortenberry, was indicted
for the murder of John N. Haddox.—

The copy of the indictment furnished the accused charged
James "B." Fortenberry with the murder of John N. Haddox;
to which was attached the clerk's certificate stating that it was
a correct copy of the indictment against James "B." Forten-
berry for the murder of "Robt." N. Haddox.   And in the
copy of the special *venire facias* furnished the accused, the
names of some on the list were marked as served with the
writ, which were not so marked in the original, and other
names were marked in the original as served, which were not
so marked in the copy.

Amongst others, the following instructions were given for
the state :

 "3. Where there is a killing proved, the law presumes it is
murder, and it is incumbent on the defendant to establish his
innocence, unless it appears from the testimony against him.

 "6. Every killing with a deadly weapon is presumed to be
malicious, and amounts to murder, until the contrary appears
from circumstances of alleviation, excuse, or justification, and
it is incumbent on the accused to make out such circumstances
to the satisfaction of the jury, unless they arise out of the
evidence in the case; and if the jury believe from the evi-
dence that the defendant shot and killed Haddox by the use
of a gun and pistol, or either, and that such gun and pistol
were deadly weapons, and that at the time he so shot and
killed the deceased he had no reasonable ground to appre-
hend, from some overt act of the deceased, that deceased then
designed immediately to commit some felony upon his per-

son—in such case he is guilty of murder, and the jury should so find.

" 11. The great personal injury the danger of which the law allows a party to resist by slaying his antagonist with a deadly weapon, means a felonious assault endangering life or limb, and must be in striking distance; and if the jury believe from the evidence that the deceased, after an altercation with the defendant, had left his house and yard, and, on some further angry words arising, returned to the gate of Fortenberry, and, whilst so at the gate, was shot and killed by Fortenberry, by the use of a deadly weapon, and that the deceased at the time of the shooting was not in striking distance of the accused, by any deadly weapon shown to be in his hands—in such case Fortenberry is, *prima facie*, guilty of murder."

The accused asked for the following instruction, which the court refused to give:

" 10. The court instructs the jury that although it may have been proved to their satisfaction that the accused killed the deceased, yet every killing is not murder, and it is never incumbent on the accused to prove conclusively to the jury that the act was committed in self-defense. But if, from all the testimony in the case, there arises a reasonable doubt in the minds of the jury as to whether the killing was done in self-defense, then they must acquit."

*Jayne & Buchanan* and *Cole & Henry*, for the plaintiff in error.

1. The Revised Code (sec. 2758) required that a copy of the indictment and special *venire* be delivered to the prisoner one entire day before the trial. This is mandatory. *Loper* v. *The State*, 3 How. 432. By comparison of the originals with the pretended copies, it will be seen that this was not done.

2. The court erred in declaring William Reeves incompetent for a juror, and discharging him. He might have had conscientious scruples in regard to the infliction of capital punishment, and still have been a competent juror. *Williams* v. *The State*, 3 Geo. 318.

3. It was error to have the by-standers called to complete the jury in this case, before exhausting the regular panel for the week or tales jurors for the day. Rev. Code 1871, secs. 2759, 738.

4. The third and sixth instructions given for the state were erroneous in presuming every killing with a deadly weapon to be murder. The true rule of law upon this subject is laid down by Justice Wilde in his dissenting opinion in *The Commonwealth* v. *Fork*, 9 Metc. 93. See, also, note to this case in Leading Criminal Cases *(Bennett* v. *Heard)*, 2d edition, volume 1, page 361.

5. The court erred in refusing the tenth and thirteenth instructions asked for the prisoner. The tenth instruction was drawn from the able opinion of this court in the case of *Pollard* v. *The State*, 53 Miss. 410; *Pond* v. *The People*, 8 Mich. 150.

*Robert Lowry*, on the same side, after having argued some of the points raised by the preceding counsel, insisted, further, that the eleventh instruction given for the state is not the law. A man is not compelled to wait till his assailant, who is advancing on him with a drawn knife, is within striking distance before he can lawfully slay such adversary, for, after he is in striking distance, it is too late for the assailed party to defend himself effectually against the assault. The moment the assailant is in striking distance with a knife, he strikes before he can be prevented, and inflicts the very injury against which the law allows every man to protect himself. But this instruction would compel him to wait until the injury is inflicted, and until it is too late to save himself from such injury, before he would be allowed to resist.

*G. E. Harris*, Attorney-General, for the State.

1. The errors in the copies of the indictment and special *venire* were merely clerical, and worked no injury to the accused. Code 1871, secs. 2758, 2799, 2843.

2. Reeves was not a competent juror, and the court had a right to reject him without challenge. *Lewis' Case*, 9 Smed. & M. 118, 119; *Williams' Case*, 32 Miss. 398; *Walker* v.

*The State,* 40 Ala. 325; *Payne's Case,* 3 Humph. 375; *Walter's Case,* 32 N. Y. 147. The juror should be "above all exception." *Nelson's Case,* 13 Smed. & M. 500; *Colton's Case,* 31 Miss. 504; *McGuire's Case,* 33 Miss. 383.

3. There was no error in summoning by-standers to complete the jury in this case. There was no regular *venire* for that week of court, and it was proper to take by-standers. *McCarty's Case,* 26 Miss. 299; *Head's Case,* 44 Miss. 731.

4. Upon the assignment of error for giving instructions for the state, see Code 1871, secs. 2628, 2629; *Green's Case,* 28 Miss. 687; *George's Case,* 39 Miss. 570; *Harris' Case,* 47 Miss. 318; Whart. Cr. Law, 3d ed., 436, 457, 458; *Long's Case,* 52 Miss. 23.

5. It was not error in the court to refuse to grant the tenth and thirteenth instructions asked for the accused. So far as they propounded the law correctly, they had been previously given, and the court is not bound to repeat instructions, though they be correct. *Preston's Case,* 25 Miss. 383; *Browning's Case,* 30 Miss. 636.

*S. H. Ferral,* District Attorney, on the same side.

Special objection is made to the instructions for the state which restrict the doctrine of self-defense to an assault within striking distance. "A force which the defendant has a right to resist must itself be within striking distance." Whart. Cr. Law, 3d ed., 462, 463. *The People* v. *McLeod,* 1 Hill, 377, 420; 2 Archb. Pr. & Pl., 6th ed., 224, and note 2; *ib.* 225, note 4; *United States* v. *Vigol,* 2 Dall. 346; *Cono* v. *Cranse,* 3 Alb. L. J. 299. There are extreme cases where this language is modified, as in *Colton's Case,* 31 Miss. 504, and *Long's Case,* 52 Miss. 23; but Fortenberry is not entitled to invoke a modification of the rule in his case.

*P. P. Bailey,* on the same side, filed an elaborate brief, in which he argued the same points made by the attorney-general and S. H. Ferral, Esq.

CHALMERS, J., delivered the opinion of the court.

The clerical mistakes in the copy of the indictment and

special *venire* served upon the defendant could not possibly have prejudiced him, and there was no error in refusing the continuance asked for on account of them.

There was no error in rejecting, as incompetent, William Reeves, a member of the special *venire*, who stated that he had conscientious scruples against capital punishment. *Russell* v. *The State*, 53 Miss.

There was no error in summoning by-standers to complete the jury, after the exhaustion of the special *venire*, there being no regular *venire* for the week nor talesmen.

There is no error in the third and sixth instructions given for the state. The third omits the words "with a deadly weapon." If it be conceded that this omission was erroneous, it is abundantly cured by a number of the others.

The tenth instruction asked for defendant was correct, but its refusal constitutes no error, because the substance of it is contained in several others granted, particularly in defendant's sixth.

Defendant's thirteenth instruction was properly refused, because not applicable to the facts. So much of it as was applicable was embraced in defendant's fourteenth instruction.

There was error in granting the eleventh instruction for the state.

By it the jury were informed that the assault which a man may kill his antagonist in resisting "must be an assault within striking distance;" and, further, that if they believed that, "at the time of the shooting, the deceased was not in striking distance of Fortenberry, by any weapon shown to be in his hand, they must find the accused guilty of murder."

This is erroneous under the facts of this case. The statute declares homicide justifiable "when there shall be reasonable ground to apprehend a design to commit a felony or do some great personal injury, and there shall be imminent danger of such design being accomplished."

The reasonable appearance of danger must be imminent — that is to say, there must be a reasonable apprehension, from some overt demonstration, that the danger is then and there

present and impending—but it is not necessary for the party assailed, or about to be assailed, with a deadly weapon to wait until the assailant is within striking distance, in the sense in which the expression is here used.

The deceased, according to defendant's witnesses, was rapidly advancing with a drawn knife, in a threatening and hostile manner, upon defendant, who was armed with a gun. He would not have arrived within striking distance with his knife until he had come within arm's length. Then, defendant's gun would have been comparatively useless, and the knife of deceased, most deadly. A man assaulted, or about to be assaulted, with a deadly weapon is not bound to wait until his antagonist gets upon equal, much less upon superior, terms. He may rightfully use the advantage which his own innocence and his assailant's rashness have given him.

It is impossible to say that this charge worked no prejudice to the defendant.

In this class of cases we cannot hold that the jury were not misled by an erroneous charge, if there is any possible view of the testimony which would warrant a verdict of acquittal. In other words, we could only affirm a verdict of conviction, despite erroneous charges, where, conceding all the testimony of defendant to be true, the verdict was, nevertheless, manifestly correct. We cannot say that this is the case here. Whatever opinion we may entertain with regard to the testimony of defendant's wife and daughter, we are bound to treat it as true in the consideration of this charge.

According to their statements, deceased had grossly insulted defendant and his wife in their own house. He had drawn his knife upon defendant, rubbed his clenched hand against his face, and in every way possible attempted to provoke a fight, which defendant declined. Leaving the house, he continued his abusive language. When at length defendant, who remained standing on his porch, returned one of the abusive epithets, deceased started back towards him, with his knife still drawn, declaring that he would not stand it; and, despite the

warnings of the wife, continued to advance until he was shot down. The distance at which he then was from defendant is variously estimated at from twenty to thirty steps. Certainly the knife was not effective at that distance; but defendant was not bound to wait until it became so, and the jury should have been left, uninfluenced by erroneous charges, to say whether there was, under this state of facts, a reasonable appearance of imminent danger. It is true that defendant's fourteenth charge contained a fair summary of the wife's statement, and the jury were there told that if they believed this statement, "and that the danger to Fortenberry of losing his life or having great bodily harm inflicted upon him by Haddox was immediate and imminent, he was not guilty;" but this instruction contained no information as to what was "imminent and immediate danger," and the jury, looking back to the eleventh instruction given for the state, would be there informed that it could not exist until the deceased came within striking distance with his knife. It was impossible, therefore, for the one instruction to neutralize the other. The error in the eleventh instruction for the state is, to some extent, contained in the tenth also. For this error the case must be reversed. As it must undergo another trial, we feel called upon to say that we are not to be understood as indorsing the truth of the theory of the facts here presented, except for the proper consideration of the erroneous instructions.