### THOMAS L. MORROW *v.* THE STATE.

1. HOMICIDE.   *Witnesses.   State's duty to introduce.*
   The prosecution in a case of homicide is not bound to introduce all the witnesses of the killing who are marked as State's witnesses and present at the trial.

2. SAME.   *Exception to rule.   Presumption of law.*
   *Semble* that the prosecution cannot, by introducing a witness to the fact of killing alone, force the accused to introduce State's witnesses to rebut the presumption of murder.

ERROR to the Circuit Court of Washington County.

Hon. B. F. TRIMBLE, Judge.

*W. P. Harris* and *W. B. Pittman*, for the plaintiff in error, each argued orally and in writing.

As the witnesses saw the homicide, the prosecutor was bound to call them.    *Rex* v. *Simmonds*, 1 Car. & P. 84 ; *Regina*

v. *Holden*, 8 Car. & P. 606 ; Roscoe Crim. Evid. 135 ; *Regina* v. *Chapman*, 8 Car. & P. 558 ; *Regina* v. *Stroner*, 1 Car. & K. 650. American courts of high repute hold the same doctrine. *Maher* v. *People*, 10 Mich. 212 ; *Hurd* v. *People*, 25 Mich. 405. The case of *State* v. *Martin*, 2 Ired. 101, is merely to the effect, that after the prosecutor has fully developed all the facts, where there are a great number of witnesses, he is not bound to introduce cumulative testimony. In the case at bar, however, the facts were not all proved ; but, by selecting the strongest witnesses against the accused, the prosecutor forced him to introduce State's witnesses.

*T. C. Catchings*, Attorney General, for the State, filed a brief, and argued the case orally.

The witnesses had been examined, and their previous testimony on file in court showed their strong bias in favor of the accused. Their relations to him were such as to make them improper witnesses for the State. Old English cases cited by opposing counsel are based upon a practice and course of procedure different from that in our courts. The Michigan cases are unsound, and are inapplicable to the state of facts in the case at bar. Judge Ruffin, in *State* v. *Martin*, 2 Ired. 101, properly held that the doctrine contended for by opposing counsel is unsupported by reason or practice. He declared that the prosecutor has the right to examine such witnesses as he chooses ; and that it is his province, not the court's, to determine who shall be the State's witnesses.

CHALMERS, J., delivered the opinion of the court.

Thomas L. Morrow was convicted of the murder of Thomas J. White, and sentenced to confinement in the penitentiary for life. He prosecutes this writ of error to reverse that judgment. The principal ground of reversal urged is that the district attorney in the court below having closed the case for the State without examining two witnesses whose names were marked as State's witnesses on the back of the indictment, and who were present at the trial, the accused by his counsel moved the court to compel their introduction and examination by the State, upon the ground that the testimony already delivered showed that they were present at the kill-

ing, and under such circumstances it was the duty of the prosecution to put them upon the stand. This motion being denied, exception was duly taken.

There are several English cases decided at *nisi prius* which lay down the doctrine with more or less distinctness, that it is incumbent upon the Crown in a prosecution for a homicide to produce every attainable witness who was present at the killing. *Regina* v. *Holden*, 8 Carr. & P. 606; *Regina* v. *Chapman*, 8 Car. & P. 558; *Regina* v. *Stroner*, 1 Car. & K. 650; Roscoe Crim. Evid. 135. The doctrine seems to have met the approval of the Supreme Court of Michigan in two cases; though, when analyzed, these are rather adjudications that it is not permissible for the prosecution to present an isolated part of the *res gestæ* without a full development of all that occurred, than a declaration that it must examine all the witnesses who were present at the transaction. *Maher* v. *People*, 10 Mich. 212; *Hurd* v. *People*, 25 Mich. 405. The doctrine is utterly repudiated and denied by the Supreme Court of North Carolina, which, through one of its most eminent members, Judge Ruffin, declared that it had neither principle nor practice in that State to support it, and that " it was the province of the solicitor, and not of the court, to determine who should be the State's witnesses." *State* v. *Martin*, 2 Ired. 101, 120. We find no other adjudications on the subject, and no allusion to the doctrine in any American textbook. We are not prepared to go to the length of the Supreme Court of North Carolina in holding that the court would have the right under no circumstances to compel the production by the State of the testimony of the eye-witnesses of the homicide. If the prosecuting officer should content himself with proving the bare fact of killing by one who had witnessed that act only, resting his case upon the legal presumption of guilt thereby implied, and if it was made evident by the testimony produced that there were other witnesses present who saw the whole transaction, it would, we think, be always within the sound discretion of the court to compel their production by the State, if in attendance or easily attainable.

Whether a refusal to exercise such discretion could ever be ground of reversal, we will not decide, except to say that it

could only be so where it was made to appear that actual injustice had been done to and injury sustained by the accused, as where he had been compelled by such imperfect presentation of the facts, and by the legal presumptions thereby raised, to produce as his own a witness with strong bias against him, whose testimony militated against the general theory of his defence.᾿ When- such a case is presented, we shall be in a better situation definitely to settle the point. No such case is before us. The principal witness whom it was demanded that the district attorney should produce was the step-daughter of the prisoner's brother, and the other was her husband. They lived at the date of the homicide with the accused, and had so lived for many years. They had twice testified in the case, and their written testimony was then in court. It constituted, if believed by the jury, a perfect defence to the charge ; and to have compelled the district attorney to have produced them as State's witnesses, and to have vouched for the truth of their statements, would have been almost equivalent to compelling him to enter a *nolle prosequi.* As soon as the motion was overruled, they were introduced by the defendant, and most exhaustively examined and cross-examined. ῾We do not think that the district attorney should have been compelled to make them his witnesses, nor do we see how any legal injury was sustained by the defendant by the action of the court.

*Judgment affirmed.*