# STANLEY HALE *v.* THE STATE.

1. CRIMINAL LAW. *Evidence. Requiring state to introduce eyewitnesses.*

A conviction will not be set aside because the court refused to compel the state to introduce the eyewitnesses of an alleged murder, they being, beside the accused, only his sister and a co-defendant from whom a severance had been obtained, and it appearing that the co-defendant and accused testified in his behalf, and that no injury had resulted to accused. *Morrow* v. *State*, 57 Miss., 836.

2. SAME. *Evidence. Previous difficulty.*

It was proper to exclude evidence offered by accused of the particulars of a difficulty between him and deceased several days previous to, and not connected with, the fatal rencounter. *Foster* v. *State*, 70 Miss., 755.

3. PROCESS. *Special venire. Motion to quash. Amendment. Code* 1892, ? 3439. ·

Failure of the circuit clerk to affix his signature to a *venire facias* is an irregularity, amendable on motion. Code 1892, ? 3439. And a motion to quash the venire dispenses with the necessity for actual amendment, where the writ has already served its purpose. *Spratley* v. *Kitchens*, 55 Miss., 578.

4. SPECIAL VENIRE. *Absent venireman. Compulsory process. Code* 1892, ? 2386.

Under ? 2386, code 1892, requiring that where a special venire is ordered, the jury shall be impaneled from those "examined and in attendance." it is not error to refuse accused compulsory process for a venireman summoned and not in attendance. *Boles* v. *State*, 24 Miss., 445, distinguished.

5. SAME. *Juror. Competency of jailer. Discretion.*

It is a proper exercise of the discretion of the court to set aside a venireman who is the acting jailer of the county.

6. SAME. *Peremptory challenge. Examination in aid of.*

Where, on the separate trial of defendant, indicted jointly with another for murder, a full panel of jurors pronounced qualified by the court is tendered him, defendant is entitled to have each juror fully interrogated as to his state of mind and feeling to the co-defendant not on trial, in order that the right of peremptory chal-

lenge may be intelligently exercised. A refusal to allow this is reversible error.

7. INSTRUCTION. *Reasonable doubt. Want of evidence.*

An instruction as to reasonable doubt, which declares that it must arise out of the evidence, is objectionable, since it may arise from want of evidence.

FROM the circuit court of Tate county.

HON. EUGENE JOHNSON, Judge.

Appellant has been convicted of murder, and appeals. The case sufficiently appears from the opinion.

*Ira D. Oglesby*, for appellant.

It may be true that an opinion as to the guilt or innocence of Robertson was not necessarily a disqualification of a juror to try appellant, but usually no intelligent attorney would think of accepting a juror or exercising peremptory challenges without seeking information not only as to his frame of mind towards the defendant on trial, but also towards his co-defendant. Within reasonable limits each party has a right to ask pertinent questions, to show not only that there existed proper grounds for the challenge, but to elicit facts to enable him to decide whether or not he will make a peremptory challenge. Thompson & Merriam on Juries, §§ 171, 243, and 254; Thompson on Trials, § 101. See, also, 12 N. E. Rep., 99; 69 Ill., 303; 45 *Ib.*, 171; 27 Fla., 370; 23 Am. Dec., 130; 28 N. W. Rep., 964; 23 Cal., 379. See, also, *Smith* v. *State*, 55 Miss., 410; *Hubbard* v. *Rutledge*, 57 *Ib.*, 7; *Smith* v. *State*, 61 *Ib.*, 754. The practice of permitting counsel to examine jurors found competent by the judge, with a view to peremptory challenge, was approved in *Story* v. *State*, 68 Miss., 609.

It was error to deny compulsory process for the absent venireman. 24 Miss., 445.

*N. A. Taylor*, on the same side.

The reason why the details of a previous difficulty are not

usually admitted is, that they divert the jury into other paths, the trial of other issues. But when no such trouble exists, and where the knowledge of a previous difficulty would materially aid to a right understanding of the relation and situation of the parties at the time of the killing, it should be admitted. The same principle applies as that under which proof may be made of antecedent threats, or to prove the dangerous character of the deceased. It shows whether it was probable that deceased was the aggressor, and tests the reasonableness of defendant's apprehensions. *Spivy* v. *State*, 58 Miss., 858; *Guice* v. *State*, 60 Miss., 714.

*W. D. Miller*, on the same side.

The court should have required the state to introduce the eyewitnesses who were shown to be under subpœna and in attendance. The state did not offer a single eyewitness, but rested its case upon purely circumstantial evidence. It should not be the policy of the state to suppress or withhold facts, even though these might result in an acquittal. Indeed, it is as much, if not more, the duty of the state to prove the party innocent, if innocent. See 52 N. W. Rep., 1033; 49 *Ib.*, 226; 55 S. W. Rep., 786; 32 Pac. Rep., 854; 33 N. E. Rep., 681; 39 Mich., 309; 8 C. & P., 745.

The ninth instruction for the state, on the subject of reasonable doubt, is erroneous. It attempts to define the undefinable thing—reasonable doubt. 60 Miss., 441; 53 *Ib.*, 424; 19 Am. & Eng. Enc. L., 1081.

*G. D. Shands*, for the state.

Appellant moved for and obtained a severance, that his case might be tried apart from that of Robertson, yet he now claims, as to the exercise of his peremptory challenge, that the proceedings shall be the same as if the trial was joint. The reasoning of appellant is bad, and the authorities cited do not sustain the contention. The whole matter of impaneling the

jury is in the discretion of the court. *Powers* v. *Presgroves*, 38 Miss., 227; *Spies* v. *People*, 3 Am. St. Rep., 320. It is only competent to show that the juror has no bias against the man on trial. 9 Am. St. Rep., 327; 23 *Ib.*, 428.

When compulsory process was asked for the venireman, the call of the venire had not been completed. It does not appear that a renewal of the demand for such process had been made after the special venire had been exhausted.

It was proper to exclude the jailer as a juror. The sheriff is, by law, the jailer, and the acting jailer must be his deputy. This was a matter within the discretion of the court.

The failure of the clerk to sign the *venire facias* is immaterial. The writ was returned, and accomplished its purpose. The objection is purely technical.

It was not obligatory on the state to introduce the eyewitnesses of a crime. *Morrow* v. *State*, 57 Miss., 836; 35 Am. St. R., 206.

The exclusion of evidence as to a previous difficulty was clearly proper. It had no connection with the killing.

*Frank Johnston*, attorney-general, on the same side, filed an elaborate brief discussing the facts at length, and, on the questions of law decided by the court, made the following points:

It is conceded that jurors should be impartial, but I deny that the right of accused has been impaired in this case. Each juror stated on his *voir dire* that he had formed no opinion whatever as to the guilt of accused. It was wholly immaterial as to whether the jurors had any opinion as to the guilt of Robertson, having sworn that they had no opinion as to defendant's guilt. This is the precise point, and it includes, necessarily, the proposition that all opinions that they had on every subject did not affect their impression in this particular case.

The legal rule involved requires no argument. The only thing is to apply it to the case. The matter rests largely in the discretion of the court. *Head* v. *State*, 44 Miss., 731;

*Powers* v. *Presgroves*, 38 Miss., 227; *Gilliam* v. *Brown*, 43 *Ib.*, 641.

The jailer was properly excluded. Section 4132, code 1892, makes the sheriff the jailer, and the presumption is that the juror was his deputy, and he, being the custodian of prisoners, should not have been a juror.

The motion to quash the special venire because the clerk had not affixed his signature, was properly overruled. The writ had then become *functus officio.* At most, it was an immaterial departure from the prescribed mode. 12 Am. & Eng. Enc. L., 343; 35 Mich., 1; 45 *Ib.*, 424; 33 Minn., 480; 7 Texas App., 23; 3 Wend., 258; 19 S. Car., 435.

Evidence of the preceding difficulty was properly excluded. *Foster* v. *State*, 70 Miss., 755.

WOODS, J., delivered the opinion of the court.

The action of the court below in refusing to compel the state to introduce as its witnesses the eyewitnesses to the homicide, was not error. The eyewitnesses were the accused himself, his co-defendant, Robertson, from whom he had obtained a severance, and who was not then on trial, and Roxie Hall, a sister of the accused. Each one of these persons, we may reasonably suppose, would be in sympathy with the defendant, and would testify as favorably as possible in his behalf; and, in the opinion of counsel for the state, the evidence of none of them was necessary to make out the state's case. The defendant himself was examined as a witness on his own behalf, and his co-defendant, not on trial, was also introduced by and testified for him. The evidence, thus offered by the defense, of eyewitnesses was most favorable to its theory of the case, and no injury was sustained by the defendant thereby. We content ourselves by declaring that no injury was sustained by the defendant by the action of the court complained of, and that no reversal, on this ground, can be had. The point is clearly ruled by *Morrow* v. *State*, 57 Miss., 836.

The exclusion of the particulars of the ''difficulty,'' whatever that may have been, of the Friday night preceding the homicide, was altogether correct. This question was very recently considered by us in the case of *Foster* v. *The State*, 70 Miss., and to that case we now refer as abundantly supporting the action of the trial court in refusing to allow evidence of the particulars of the ''difficulty'' of Friday night to go to the jury.

The overruling of the motion to quash the *venire facias* because of the clerical omission of the clerk's signature thereto, was proper. Under § 3439, code 1892, this omission rendered the writ not void, but irregular, and amendable on motion to quash. As held in *Spratley* v. *Kitchens*, 55 Miss., 578, and the cases there cited, the motion to quash for defect amendable, dispenses with the necessity for actual amendment, for the reason that, the writ having served its purpose by bringing the persons required to be summoned before the court, and the defect being clerical only and amendable, the writ must not be declared void, although an actual amendment is not made.

There was no error in the trial court's refusing, on defendant's application, to direct compulsory process for the special venireman, Brown, who had been duly summoned, and who was not in attendance. There is an intimation to that effect in *Boles* v. *The State*, 24 Miss., 445, but that was upon consideration of a statute which required the jurors to be taken from the persons ''thus summoned,'' unless the special venire should be exhausted before the jury is completed. Hutch. Code, § 1007. But that statute was amended, certainly, as early as 1857, and, as thus amended, it has been brought forward in all our subsequent codes. By the codes of 1857, 1871, 1880, and 1892 the jury is to be impaneled from those ''summoned and in attendance'' under the special venire, unless that shall have been exhausted without securing a jury, in which event resort shall be had to the regular panel, etc. The change in the law, which now requires the jury to be made up from the special venire-

men "summoned and in attendance," completely vindicates the court's action in this particular.

The setting aside the jailer, who had been summoned on the special *venire facias*, was, we think, a proper and wise exercise of judicial discretion vested in a trial court in the selection of fit persons in criminal cases. Under our statutes, the sheriff of the county is *ex officio* jailer of his county, but that this important officer may properly discharge the duties of his place, as matter of common observation, we know he usually has under him a deputy, or *quasi* deputy, who has charge of the jail and its occupants. The presence of this deputy, or *quasi* deputy at the prison, is required at the jail, and it would be inconvenient to take him from the public employment to which he is engaged, and shut him up with a jury during a protracted trial in a capital case. Besides, it seems to us that it would be unseemly to have, as one of the triers of a person capitally charged, the individual who is his keeper.

We come now to the chief contention presented by the appeal. In process of impaneling the jury to try the prisoner, the court propounded to each juror, as presented, the usual questions resorted to generally in order to ascertain the competency of such person, and, from the bill of exceptions, we learn that each juror qualified himself as to age, citizenship, being a qualified voter, never having been convicted of crime, not a common gambler nor habitual drunkard, and not related to the person killed nor to Hale, the prisoner, nor to Robertson, the person with whom the prisoner was jointly indicted for the alleged murder; and each of the persons so interrogated by the court, and by the court pronounced qualified jurors, stated that he had formed no opinion as to the guilt or innocence of the defendant, Hale, and that he could try the case fairly and impartially, and that he had no bias or prejudice or feeling in the case, except the jurors Perkins, Edwards, Howard and Moore, and each of those four stated that he had formed an opinion from rumor; that he had not heard any tes-

timony at any previous trial; that he had not talked with any witness who professed to know the facts of the case; that he had no fixed opinion as to the guilt or innocence of the defendant; that he had no bias or prejudice for or against him, and that he could try the case fairly and impartially upon the evidence introduced on trial.   After the court had examined each juror as presented, as just stated, the defendant requested the court to propound to each juror presented other questions before declaring him a competent juror.   Those questions were: "Have you formed an opinion as to the guilt or innocence of J. G. Robertson, jointly indicted with the defendant? Have you expressed any opinion against either the defendant or the said Robertson? Have you ever stated that the opinion which you had as to one applied to the other, according to the rumor you had heard? Whether, if you have formed any opinion as to the said Robertson, such an opinion would influence your verdict against the defendant, Hale? Or, whether or not, in your opinion, you could disconnect the judgment you had formed of the guilt or innocence of Robertson from Hale? Whether or not, having formed an opinion as to the guilt or innocence of Robertson, such an opinion would influence your verdict in this case?"

The court declined to propound any of these questions, as requested by defendant, and declined to permit counsel for defendant to propound them, but declared the jurors had qualified themselves upon the examination had upon the questions propounded by the court, and the jurors were pronounced by the court competent, and exception was reserved thereupon to this action of the court.

After twelve jurors pronounced competent by the court, under the examination hereinbefore set out, had been procured, and after they had been passed upon by the state, they were then presented to the defendant.   The defendant then again proposed to ask each juror then presented the questions he had asked to have propounded by the court, or under its direction,

to the several jurors when the court was examining each as to his competency, before he should be called upon to exercise his right to challenge peremptorily, and in order to determine what jurors presented to him he would challenge peremptorily. The court again refused to permit counsel for defendant to ask any of the questions of any of the jurors, and defendant again excepted.

It is important, before proceeding to the consideration of the grave questions thus presented to us, to now advert to the theory of the state in its prosecution of this appellant. The crime charged was a murder jointly committed by defendant and one Robertson. The theory of the state, as seen from the evidence offered on its part, and in its instructions asked and given, was that the homicide was committed in pursuance of a conspiracy entered into between the defendant and Robertson. The theory of the defense was a sudden rencounter between deceased and defendant in the night time on a highway, and a killing in self-defense.

As to the first action of the court complained of, viz., the refusal by the court to ask, or to permit counsel to ask, each juror, when presented singly for examination touching competency, the questions designed to disclose the state of his mind respecting Robertson, the other person jointly indicted, and the effect, or probable effect, of that state of mind upon the defendant's trial, we are not now required to pronounce. We deem it not improper, however, to say that such refusal, even on the preliminary examination as to competency, by the court, was dangerously near to an abridgement of the defendant's right to secure a fair and impartial jury, and the safer course would have been to permit the questions asked in the first instance. No possible injury could have resulted if the questions had been asked, and it may be. possible harm was done defendant by refusing to permit them asked. However this may be, we are clear that when the full panel had been procured, pronounced competent, passed upon by the state, and presented

to the defendant for acceptance or peremptory challenge, he was entitled to all fair and reasonable means of ascertaining who, and what character of men, he was thus called upon to accept or peremptorily challenge. It was his right to make such examination as would enable him to decide if there was ground for exercising his great right to peremptorily challenge. This right, conferred upon him by law, could only be intelligently exercised after a full and fair inquiry of each juror as to the exact state of his mind and feelings, not only as affecting the defendant personally and primarily, but as likely to affect his action as a juror even, and perhaps unconsciously to himself. The office of the peremptory challenge is to protect the defendant against those legally competent, but morally, or otherwise, unfit or unsuitable to try the particular case, and to deny a full and fair examination of a juror, in order to wisely exercise the peremptory challenge, would be, practically, to nullify the right. For of what avail would a peremptory challenge be if exercised at random or blindly, and without reason?

The right to peremptorily challenge is the last precious safeguard of a fair trial left to one capitally charged, before he puts life and liberty in the keeping of his sworn triers. It is not enough that a court, honest, able, impartial, has pronounced the twelve competent and qualified to pass upon the awful issue involving life and death. It is not enough, even after this, that the defendant may further challenge any of the competent twelve for cause. It is only enough when he has been permitted to challenge peremptorily, within the limits of the law, when, in his judgment, it is expedient or advisable to do so; and, that his right to challenge peremptorily may be a real instrumentality in his hands for securing a fair and impartial jury, he must not be required to exercise it blindly and without due opportunity for determining upon what juror wisdom indicates he should employ it.

In the case at bar, defendant was jointly indicted with another for murder—a murder, as the now developed case dis-

closes, according to the state's theory, in pursuance of a conspiracy. Eight of the jurors whom the defendant was denied the right to examine in the manner indicated, in order to intelligently exercise his peremptory challenges, if such exercise should seem necessary or advisable after such examination, had not shown that they had not talked with the witnesses, and had not heard the evidence on any of the former trials, and the attitude of the entire twelve, mentally and morally, towards defendant's co-conspirator was wholly undisclosed by any direct avowal. True, they had severally answered, on their examination by the court as to competency, that they had neither formed or expressed any opinion as to the defendant's guilt or innocence, but, if the defendant must be required to accept their answers as final and unquestionable, and must be held to abide the court's conclusion as to the competency of a juror as shutting the door to all further inquiry, and as precluding any searching and sifting of the juror with a view to discriminatingly using his peremptory challenge, then, indeed, this cherished right of freemen has already ceased to exist.

The action of the court below in refusing to permit the examination of the jurors, when a full panel was presented the defendant for his acceptance or peremptory challenge, with a view to intelligently exercising the right of challenge, was error, and must reverse the judgment.

The ninth instruction given for the state is not free from objection. A reasonable doubt may arise from a want of evidence as well as out of the evidence.

*Reversed and remanded.*