COMBS *v.* STATE.

(Division B.   April 6, 1936.)

[167 So. 54.   No. 32095.]

**Jeff Collins,** of Laurel, for appellant.

**W. D. Conn, Jr.**, Assistant Attorney-General, for the state.

Argued orally by **Jeff Collins**, for appellant, and by **W. D. Conn, Jr.**, for the state.

**Griffith, J.,** delivered the opinion of the court.

Appellant was the constable of his district and had in his hands a valid writ of replevin to be levied upon an automobile truck in the possession of the deceased. When the officer went to levy the writ, the deceased demurred and contrived excuses for a delay of the levy, which delay was granted by the officer. During this time the deceased appeared to have become enraged and uttered divers insults and threats directed towards the officer. The latter conducted himself nevertheless with patience and forbearance, making no replies in kind to the insults and threats of the deceased; but, finally, the officer came to the realization that temporizing in the matter was accomplishing nothing towards the performance of the duties imposed upon him, and he took possession of the truck.

When the officer got upon the truck and placed him-

self in the driver's seat, the deceased, who was approaching, shouted to the officer not to touch the truck; but this the officer, of course, disregarded. And while the officer was engaged in getting the engine started, the deceased reached the truck on its right-hand side and seized an axe, which was somewhere in the back of the vehicle, and struck the officer upon the head. The officer saw the descending axe in time, however, to throw up his arm, and thereby in part warded off the blow, and although the officer was hit on the head with the axe it was a glancing blow, knocking off the hat of the officer; and as a further result the officer was either knocked off the seat to the ground, or else lost his balance and fell to the ground, on the left-hand side of the truck.

When the officer was thus knocked off the seat of the truck and fell to the ground, he pulled his revolver as soon as he could do so, and he at once rose to a standing position when he immediately fired upon the deceased, who, according to some of the witnesses, was then running around the front of the hood of the truck and was turning towards the left side of the truck where the officer had fallen. It is at this particular point that there occurs any material difference in the versions of the several witnesses. As some of the witnesses saw it, the deceased, when the first shot was fired, had already completed the left turn at the hood of the truck and was running away from the officer and toward the protective side of the store, in front of which the truck was standing. Others say that the first shot was fired as the deceased was making the turn around the front of the hood, at which point and time. apparently, the deceased was intent upon reaching the place where the officer had fallen and to continue the encounter, only a few seconds theretofore begun by him, this latter theory being further borne out by the fact that the axe slipped from the hands of the deceased, when he attempted the blow above described, and fell on the left-hand side of the truck; and, according to this version, the apparent

purpose of deceased was to recover the axe and to continue the attack with it.

The version last stated seems the more probable because of the course of the fatal wound. The officer was using a Smith & Wesson 45-caliber revolver, loaded with steel jacketed bullets. The bullet which caused the death struck the deceased about an inch below and in front of the left shoulder joint, and, ranging downward at an angle of approximately forty-five degrees, made its exit on the right side about the ninth or tenth rib. The only explanation which the present record offers for this course of the bullet is that it struck the deceased when he was making the turn at a rapid gait at the front of the hood, and which, because the deceased was a very large and heavy man, would cause him to lean considerably to the left of an upright position. And if this version be correct, then appellant would justly be entitled to an acquittal.

But we do not think that the course taken by a bullet is so completely conclusive, as a matter of proof, that we should on that account discharge the appellant rather than remand for a new trial. But in reversing and remanding, we do hold, and do now direct, that appellant shall not be convicted, in any event, of any greater offense than manslaughter; and we so hold under the authority of Beasley v. State, 64 Miss. 518, 8 So. 234, 235, and also Jackson v. State, 79 Miss. 42, 30 So. 39, in both of which cases the facts were stronger for the state than in the present case.

In Beasley's Case the accused and the deceased were in the woods hunting. The deceased began a verbal altercation with the accused, when suddenly and without warning or any sufficient provocation the deceased shot at the accused with a rifle, and, having missed, the deceased turned and ran, whereupon the accused immediately shot him in the back of the head and killed him. The court in reversing a conviction of murder, said: "Deliberation is not in the nature of things predicable

of one in that situation. If fear be absent, passion and a spirit of resistance and resentment would be justly aroused and excited by such circumstance, and instantly killing the assailant would be manslaughter at most. The fact that the person shot at and instantly returning the fire and killing his assailant intended to kill, and was deliberate enough to do it, would not make him guilty of murder."

When any man guilty of no wrong or provocation on his part is attacked by an antagonist in such manner as to clearly evince a purpose on the part of the antagonist to inflict some great bodily harm, it is but natural and instinctive that the person so attacked will instantly strike back and as soon as he can co-ordinate his physical powers so to do, and before he has had time for cool reflection; and if the assault has been with a deadly weapon, it is but natural and instinctive that the person attacked will immediately strike back with a deadly weapon if he have it available. This natural and instinctive impulse to immediately strike back is characteristic of almost the entire of the animal kingdom, so that it is said that even the worm will turn. It is, therefore, out of consideration of this so-called frailty of nature that in such cases the law mitigates the offense and makes it manslaughter instead of murder; and our decisions, such as in Beasley's Case, are in accord with the course of the law in practically every other jurisdiction. The facts of this case, taken strongest for the state, bring appellant within the rule; wherefore, his conviction of murder must be reversed.

Reversed and remanded.