ROSS *v.* STATE.

(In Banc. May 1, 1939.)

[188 So. 295. No. 33583.]

W. A. Geisenberger and Lawrence Adams, both of Natchez, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the State.

Argued orally by **W. A. Geisenberger** and **Lawrence Adams**, for appellant, and by **W. D. Conn, Jr.**, for the State.

**Griffith, J.,** delivered the opinion of the court.

Appellant, a negro, was convicted of the alleged murder of one Strain, a white man, and was sentenced, under the verdict, to suffer the death penalty.

Sometimes, although not often, a spirit of community vengeance finds its way into a jury verdict under the forms of the law, when, under the real facts and the real law of the land, no such severe verdict is justifiable; and it is one of the duties of this court to be mindful of this danger when, in a case less than perfectly clear, the extreme penalty has been pronounced as a result of a verdict. And when such a verdict has been returned in a homicide case wherein all the facts disclose that the deceased has been the aggressor, and without cause or provocation, throughout the entire difficulty until the moment when the party attacked turns and slays, little else is needed to make it evident that there is presented a case wherein the inadmissible element has perhaps played a part, and the closest scrutiny then becomes the obligation of this court.

The testimony for both sides in this case shows that appellant was unacquainted with the deceased and had never come in contact with him except on the single occasion of the meeting by accident here involved. It shows that the deceased was under the impression that appellant was, or may have been, the person who had done him some fancied injury on an occasion some days before, but which in fact was not true. The deceased, on meeting the appellant, and ascertaining his name, charged the latter with this fancied wrong, which appellant denied, saying that he had not even been present on such previous occasion. The deceased profanely persisted, however, in the charge and assaulted appellant with a beer bottle, which appellant attempted to ward off by throwing up his arms, and by backing away from the deceased. Appellant appealed to some of those present to intercede, and one bystander did attempt to

persuade the deceased from the continuance of the assault.

All that has been stated in the foregoing paragraph is either undisputed or is shown by the great weight of the evidence. And the evidence in behalf of appellant shows that the deceased continued the unprovoked assault and battery on appellant until the moment, or until very nearly the same moment, when appellant succeeded in getting a pistol from his bosom and slew the deceased. The undisputed evidence is also that appellant was a person of small stature, crippled by the loss of one foot, while the deceased was of large size, and in full possession of all his natural powers, and that in addition, as already mentioned, deceased was using a beer bottle as a weapon of assault.

In this state of the record of the evidence, the court gave the following instruction against appellant:

"The Court instructs the Jury for the State:

"That murder is the killing of a human being without authority of law and with the deliberate design of effecting the death of the person killed, and in this case, if the Jury believes from the evidence beyond a reasonable doubt, that the defendant, Mose Ross, did then and there wilfully, unlawfully, feloniously and of his malice aforethought kill the deceased, Francis Strain, and that at the very instant and time the shot was fired, the said Mose Ross was in no immediate danger, real or apparent, of losing his life or suffering great bodily harm at the hands of the said Francis Strain, it is the duty of the jury to convict the defendant, and this is true no matter how short a time such deliberate design to take the life of the said Francis Strain may have existed in the mind of Mose Ross, if such deliberate design existed."

This instruction was harmfully erroneous in the state of case which we have above outlined, and obviously so. The jury had a right to believe the evidence in behalf of appellant that the unprovoked and dangerous assault by the deceased continued until almost the very moment

when appellant fired. And in determining whether such an instruction was erroneous we must consider, as against the validity of the instruction, that the stated evidence in behalf of appellant was true. Fortenberry v. State, 55 Miss. 403, 409. What becomes of such cases on the facts of those cases as Beasley v. State, 64 Miss. 518, 8 So. 234; Jackson v. State, 79 Miss. 42, 30 So. 39, and Combs v. State, 175 Miss. 376, 167 So. 54, not to mention others of similar import, if in such a case as we have here the use of the quoted instruction be approved?

In Beasley's case, he and Starnes were hunting in the woods. Starnes began a quarrel with Beasley, and without any provocative act on the part of the accused, Starnes shot at Beasley but missed, whereupon Starnes ran, and Beasley arose from his sitting position and shot and killed Starnes as the latter was fleeing. The state sought to sustain a conviction of murder upon an instruction to the effect that if at the very moment of the killing, the accused was in no real or apparent danger, the verdict should be that he was guilty of murder. The court held that, as applied to such a case, the instruction was erroneous, and said that the deliberation essential to malice aforethought in murder is not predicable of any such a situation.

There are cases, of course, in which the instruction would be available, but its use in cases to which it is not justly applicable has been condemned again and again; and this is plainly another case wherein the instruction is not only not applicable, but has actually and harmfully misstated the applicable law, and is, therefore, palpably erroneous, and to the extent that a reversal must be ordered—the authorities already cited being sufficient upon the point. But the following cases might also be examined with profit: Ex parte Wray, 30 Miss. 673; Long v. State, 52 Miss. 23; Jones v. State, 98 Miss. 899, 54 So. 724; Williams v. State, 122 Miss. 151, 84 So. 8; Dalton v. State, 141 Miss. 841, 105 So. 784.

Upon the record before us, there is a grave question,

upon a close analysis of that of the evidence which is the more substantial and dependable in its nature, whether appellant should, in any event, have been convicted of any greater offense than manslaughter; but, as the case must go back, we think it better, under the circumstances here presented, to refrain from any such precise analysis of the evidence at this time and to leave that task to the new record if the result of the next trial shall result in another appeal. A new record may perhaps contain an accurate diagram or map of the locus in quo showing distances in feet in aid of such an analysis, there being no such diagram in the present record.

The State introduced two of the eyewitnesses, but two others, Reck and Frishman, were not introduced either by the State or by the defendant. Appellant moved the court that he permitted to introduce Frishman, but to be allowed in so doing to treat him as if an adverse witness. The motion was overruled.

The ancient rule of the common law required the prosecution to introduce all eyewitnesses to the homicide; but this rule has been modified in this state, so that when some of the eyewitnesses have been introduced by the state, the failure by the state to introduce the others or the refusal by the court to allow them to be examined as if witnesses for the state is not error, in the absence of rarely exceptional circumstances. See Morrow v. State, 57 Miss. 836; Hale v. State, 72 Miss. 140, 16 So. 387; Carlisle v. State, 73 Miss. 387, 19 So. 207; Patty v. State, 126 Miss. 94, 88 So. 498; Mitchell v. State, 171 Miss. 4, 156 So. 654.

Reversed and remanded.