183 So.2d 908 (1966)
Eugene PHILLIPS
v.
STATE of Mississippi.
No. 43851.
Supreme Court of Mississippi.
March 14, 1966.
A.S. Scott, Jr., Laurel, for appellant.
Joe T. Patterson, Atty. Gen., by G. Garland Lyell, Jr. Asst. Atty. Gen., Jackson, for appellee.
*909 BRADY, Justice:
Eugene Phillips, a twenty-eight year old Negro man, was convicted of murder in the Circuit Court of the Second Circuit Court District of Jones County on March 29, 1965, and was sentenced to imprisonment for life in the Mississippi State Penitentiary. From this conviction and sentence, this appeal is prosecuted.
The essential facts in this case are as follows: On Saturday, June 6, 1964, in the early evening hours, an altercation occurred between Charles Carr, the deceased in the case at bar, and Curtis Peter Phillips, a brother of the appellant. Curtis Phillips sustained cuts to his neck, which necessitated stitches being taken at the local hospital.
The appellant had been hunting. Upon his return, and after seeing his brother at the hospital, he went and got his automatic 22 caliber rifle from the car in which he had gone hunting. He and his brother then proceeded in search of Charles Carr.
Shiar Rahan's Funeral Home is located on the northwest corner of the intersection of Jackson Street, which runs east and west, and Fourth Avenue, which extends north and south. Immediately west of the funeral home is situated a duplex, the west side of which is occupied by Billy Barnett. His home is separated by an alley, or a narrow strip of land grown up in weeds, from a second duplex which is immediately west. In the east apartment of the second duplex immediately west of Billy Barnett's home is the home of Charley (Jerry) McMillan and his wife, Christine. Parked in this alley, and headed north, was McMillan's automobile. When appellant and his brother rode by in front of the home of Charley (Jerry) McMillan, they saw Charles Carr standing in the front yard talking to some persons on the front porch of McMillan's home. They continued east on Jackson Street and turned left and parked in front of Shiar Rahan's Funeral Home.
Taking the automatic rifle from the car, they wallked behind Billy Barnett's home and then westward until they came to the alleyway between the Barnett and McMillan houses. It was approximately 10:30 at night. Although there were lights in front of the houses, the record indicates that there were no lights behind the houses or in the alleyway between the houses.
Seated on McMillan's front porch were Charley (Jerry) McMillan, Christine McMillan, and Roosevelt Dean. Standing in the front yard talking to them were Charles Carr and Will Smith. Charley and Christine McMillan, with Roosevelt Dean, testified that they heard appellant coming through the alley; that he had the automatic rifle in his hands; that the appellant came to the back of the car and commanded Charles Carr to halt; that when Carr saw the appellant he turned and immediately ran and jumped in his convertible car, which was parked in front of Billy Barnett's home. These three witnesses also testified that, after he jumped into the car, he ducked down below the front seat; that he started the car from the floor in an attempt to get away, and that appellant started shooting at him, resting his automatic rifle on the back of the car which was parked between the Barnett and McMillan houses. These three witnesses also testified that someone in Charles Carr's car began firing at the appellant; that five shots were fired, two striking the trunk compartment of McMillan's parked automobile, and three striking the front of McMillan's home. All of these witnesses testified that they did not see any weapon in Charles Carr's hands; that someone shot from the front seat, but they did not see Charles Carr fire a shot.
Seated in the front seat of Charles Carr's Chevrolet convertible was Robert Martin, and on the back seat was Booker T. Woolfax. The record discloses that the five shots were fired by Robert Martin, who owned the five shot "Ivy" Johnson 38 caliber revolver. The record discloses *910 that Charley McMillan said to the appellant: "Gene, don't shoot that boy." This is corroborated by Christine McMillan and Roosevelt Dean. Roosevelt Dean also stated that after Charley McMillan had begged appellant not to shoot that boy, Gene said to Charley McMillan, "Well, tell him to get out, Charley." The record discloses that Roosevelt Dean fled into McMillan's house and hid behind the door, while Will Smith, who stoutly contended on the witness stand that he did not see or hear anything except the shots which were fired, fell flat on his stomach, to the ground.
The record discloses that Charles Carr was shot in the left temple. He was taken to the hospital in an unconscious condition and there died around three-thirty the following afternoon. The appellant and his brother fled, but subsequently appellant turned himself in at the City Hall in Laurel, Mississippi. There Thomas Ellzey and M.E. Campbell interviewed the appellant, who freely admitted to them that he had shot Charles Carr in the head with his automatic rifle. These officers found Carr in his automobile, lying on the front seat, having been shot in his left temple; that the car which he had started had moved down the street for a short distance and had run off the road into a ditch or culvert on the north side of Jackson Street.
Appellant told the officers that he had left the rifle at his mother's home, where it was found. He also told them that he hollered at Charles Carr but that the persons in the car started shooting at him; that he then went behind McMillan's house and picked up his automatic rifle, where he had hidden it, and returned the fire. He admitted that he and his brother had been looking for Carr; that they saw him in front of McMillan's home and that he parked his car in front of the funeral home and went behind the buildings and through the alley in order to make contact with Carr. He also told the officers that subsequent to the "cutting scrape" between Carr and his brother, Curtis, he got his rifle and was looking for Carr. Officer Campbell said appellant told them that he had planned to kill Carr if he found him. Booker T. Woolfax, who was in the back seat of Carr's car merely had been picked up by Carr an hour before at the bus station. He was a resident of Careyville, Texas, and after the shooting he has completely disappeared.
Curtis Peter Phillips, the brother of appellant, and appellant both testified that appellant did not fire the first shot; that the first shot was fired from the convertible automobile owned by the deceased; that three shots were fired before the appellant returned fire. This, of course, was in sharp conflict with the testimony of both of the McMillans and Roosevelt Dean.
The appellant assigns four errors which he maintains the lower court committed. We will take these errors up in the order in which they are presented in the brief of appellant. The first error relates to statements made by the court when appellant was making his summation to the jury. The record discloses that appellant's counsel, in addressing the jury, complained about the failure of the prosecution to use Robert Martin as a witness for the state during the presentation of the case. Appellant's attorney observed that this witness had been subpoenaed by the state and that he had been found and brought into the courthouse but not used. Objection to these statements was made by the county attorney, and the court sustained the objection. The county attorney stated that the witness was available to the appellant, and the court also stated that the witnesses who were brought into the courthouse were just as available to the defense as they were to the state; that the defense could have availed themselves of the person of Robert Martin just as well as the prosecution could have. It is this explanation stated by the court, in response to the objection made by the county attorney to appellant's summation, that the appellant now assigns as error. We hold that it was not error for *911 the court to so advise the attorney for appellant. Furthermore, the state is not required to put on all eyewitnesses to a crime. Ross v. State, 185 Miss. 438, 188 So. 295 (1939); Mitchell v. State, 171 Miss. 4, 156 So. 654 (1934); Patty v. State, 126 Miss. 94, 88 So. 498 (1921); Carlisle v. State, 73 Miss. 387, 19 So. 207 (1895); Hale v. State, 72 Miss. 140, 16 So. 387 (1894); Morrow v. State, 57 Miss. 836 (1880).
It is to be noted that at this point in the trial of the case the appellant did not object to the court's ruling nor did the appellant at that time ask for a mistrial because of any highly prejudicial error which had been committed by the court. On April 7, 1965, nine days subsequent to the time the objection to the appellant's summation to the jury was sustained by the court, a bill of exceptions was requested by appellant. This alleged bill of exceptions was written and it embodied substantially what has been herein outlined with reference to the statements made by counsel representing appellant, the objections thereto, and the court's statements.
The court certified that the bill was a substantial recapitulation of what transpired during one phase of the final argument to the jury, but the bill of exceptions he declined to allow because appellant made no objection to the court's ruling at the time, took no exception thereto, and made no motion for a mistrial. The circuit court signed the certificate to the purported bill of exceptions. We hold that there was not an abuse of his discretion as there was no prejudicial error committed by the court in explaining to appellant's attorney the reason for his ruling. Kitchens and Pearson v. State, 243 Miss. 194, 137 So.2d 919 (1962).
It is to be noted also that appellant did not offer to show that Martin would have given any testimony which could have exculpated the appellant. We held in Brown v. State, 200 Miss. 881, 27 So.2d 838 (1946), that the failure of either party to examine a witness equally accessible to both is not a proper subject for comment before a jury by either of the parties.
Appellant next urges that "the trial court committed prejudicial and reversible error in refusing the entry of an affidavit prepared and signed by the county attorney charging one Robert Martin with assault and battery with intent to kill the appellant."
The record discloses that City Policeman M.E. Campbell testified on cross-examination by appellant's attorney that the bullets that struck the back of McMillan's 1955 Chevrolet car and the front of his house were fired from the right front seat of the deceased's 1956 Ford convertible; that the five shots were fired by Robert Martin. The record further discloses that they were fired from the 38 caliber "Ivy" Johnson revolver which Martin had and which was subsequently left at Beatrice Cochran's or Moten's house on Elm Street, where it was found by Officer Campbell.
The jury heard the testimony of the witnesses regarding the exchange of shots by the appellant and Robert Martin. Martin's five shot 38 caliber revolver was introduced in evidence by the appellant, with the five empty cartridges still in the cylinder, without objection from the state.
The record further discloses that on direct examination by the county attorney, Officer Campbell testified that charges were filed against Robert Martin for assault and battery with intent. No questions with reference to these charges were directed to this witness by the appellant's attorney on cross-examination.
It is evident that the jury heard all the essential facts involved in the case at bar. The rights of the appellant were not prejudiced by the court's refusal to permit the affidavit made by the county attorney, charging Robert Martin with assault and battery with intent to kill and murder, to be introduced in evidence to the testimony of the circuit clerk. It was not a proper exhibit to the testimony of the circuit clerk, *912 or any other witness, for the reason that it is but an expression of an opinion or conclusion which at one time was believed to be proper or necessary by the county attorney. It was not offered in impeachment of any witness and the jury had heard all the facts upon which the affidavit was based. The appellant cites no relevant authority in support of this assigned error in which we hold there is no merit.
Appellant urges earnestly that the lower court erred when the state was permitted to develop evidence concerning the prior difficulty between the deceased and a brother of appellant, which difficulty took place out of the presence of appellant. The lower court, it should be noted, did not permit any details with reference to the altercation which took place between appellant's brother and the deceased, but did permit the introduction of evidence to show that there had been a previous fight between the deceased and appellant's brother. It also permitted evidence to show the acts of appellant subsequent to the time of the fight and immediately before the time appellant shot the deceased. We have held that such evidence is admissible to show motive or state of mind. As we stated in Hughes v. State, 207 Miss. 594, 42 So.2d 805 (1949), "We think the evidence was admissible at least for the purpose of showing appellant's state of mind at the time of the attack, since no motive therefor is in evidence. At any rate, its admission, if error, was not so prejudicial as to require a reversal where guilt is so patent as in this case. Bridges v. State, 197 Miss. 527, 19 So.2d 738, and authorities therein cited." (207 Miss. at 604, 42 So.2d at 807.)
In Morris v. State, 148 Miss. 680, 114 So. 750 (1927), we held that such "testimony was admissible as tending to show bad feeling toward the deceased and a motive for the shooting." (148 Miss. at 683, 114 So. at 751.) See also Crockerham v. State, 202 Miss. 25, 30 So.2d 417 (1947).
The final error assigned is that the trial court should have granted the appellant a new trial. A careful review of the evidence in this case, together with the instructions which were granted, compels us to hold that this appellant received a fair and impartial trial; the jury was properly instructed; the two peremptory instructions requested by the appellant were properly refused.
Here, we have another melancholy version of the ageless, interminable tragedy of Cain and Abel. Neither divine nor secular law has succeeded in eradicating murder from human experience; nevertheless, through fear and punishment man still hopes to deter or prohibit this primordial evil. The jury heard the relevant facts and found against the appellant. The evidence is abundant in support of the finding of the jury. We find no reversible error in this record, and the verdict of the jury and the judgment of the trial court is therefore affirmed.
Affirmed.
ETHRIDGE, C.J., and RODGERS, JONES and INZER, JJ., concur.