### GEORGE BEASLEY *v.* THE STATE.

1. MURDER. *Instruction. Shooting an assailant "instantly" and "deliberately."*
   B. was indicted for the murder of S. The court instructed the jury, in behalf of the State, that B. was guilty of murder if, after S. had shot at and missed him, he *instantly* turned and *deliberately* shot S. in the back while S. was whirling to run or was running. *Held,* that the instruction is erroneous, as the facts it assumes could at most only make a case of manslaughter, and the use of the word "deliberately" in such connection is futile.

2. SAME. *Instructions. Whether contradictory. Case in judgment.*
   And such an instruction is not cured by an instruction for the defendant to the effect that the defendant is guilty of manslaughter and not murder, if the evidence make it doubtful whether the killing was pursuant to a premeditated design or from sudden heat of passion aroused by defendant being shot at by deceased. The latter instruction is not a modification of the former, but they are contradictory and irreconcilable.

APPEAL from the Circuit Court of Copiah County.

HON. T. J. WHARTON, Judge.

George Beasley was indicted and tried for the murder of one Frank Starnes.

The evidence presented by the State on the trial, which was circumstantial, tended to show that Beasley and Starnes were in the woods alone hunting when Beasley shot Starnes in the back of the head with his shotgun, and then took up the rifle which Starnes was carrying and shot him through the head with it, and that no shot was fired by Starnes. The defendant in his own behalf testified that he and Starnes were out hunting alone, and both sat down to wait for a dog that had gone off, when Starnes "got up and walked off a little piece, and wanted to know of me what I had been telling those damn lies on him for. I asked him what lies. He told me that I had told Kendrick that it was him that cut off his cows' tails. I told him I didn't tell Monroe Kendrick nothing. I hadn't spoken to him. He said Mr. Kendrick had told him that. He said that we are living too close together; there was three of us then all mad at one another, and one of us had to leave, and then he throwed up his gun and shot at me and turned to run, and I shot him."

Among other instructions the court gave the following for the State :

"4. The only thing that will justify or excuse the willful and deliberate killing of a human being on the ground of self-defense is that at the very moment of the killing the party killed must be doing something really or apparently dangerous to the life or the limb of the slayer. And if the jury should believe from the evidence in this case, beyond all reasonable doubt, that Beasley shot Starnes deliberately when Starnes was running or whirling to run from Beasley, and Starnes was doing nothing at that moment really or apparently dangerous to Beasley's life or limb, then Beasley is guilty of murder, and the jury should so find, even though the jury should believe from the evidence, beyond all reasonable doubt, that Starnes had an instant before shot at and missed Beasley.

"5. If the jury should believe from the evidence in this case, beyond all reasonable doubt, that Starnes shot at Beasley and ran, and that Beasley thereupon deliberately shot Starnes in the back of the head and killed him, then Beasley is guilty of murder and the jury should convict him of murder ; but if the jury should believe that Starnes shot at Beasley, and that Beasley then shot Starnes in the head and killed him without any deliberation whatever, then Beasley is guilty of manslaughter ; that is to say, if the jury believe from the evidence, beyond all reasonable doubt, that Beasley shot and killed Starnes as he ran away from him, either with or without deliberation, then Beasley is guilty of murder or manslaughter, and the fact that Starnes first shot at Beasley will not excuse or justify the crime."

The court gave the following instruction for the defendant :

"21. The court instructs the jury that although they may believe from the evidence, beyond a reasonable doubt, that defendant did willfully kill deceased, not in necessary self-defense, yet if a reasonable doubt arises from the evidence whether the killing was pursuant to a premeditated design or from sudden heat of passion, aroused by defendant being shot at by deceased, then the jury should only find defendant guilty of manslaughter and not murder."

The jury found the defendant guilty of murder, and from the judgment against him he appealed.

*H. C. Conn,* for the appellant.

The fourth instruction for the State is a fatal error because it directly instructs the jury to find a verdict for murder upon a state of facts which would at most be manslaughter.

It would not do to say that the word deliberately cures this instruction, because "deliberately" just when it occurs does not nor would not inform the jury what was meant by it, to wit, malice aforethought. Any casual reader (not a lawyer) of this instruction would certainly lose sight of the most important element of murder, *i. e.,* malice aforethought.

It in effect instructs the jury that, that if defendant was not justifiable on the ground of self-defense, and it had already said he was not, then he was guilty of *murder,* notwithstanding every word of defendant's testimony might be true.

Now I respectfully submit that this instruction, taken altogether, in effect instructs the jury that even should they adopt the theory of facts claimed by the defendant, even then he was guilty of murder. This instruction undertakes to instruct the jury from defendant's standpoint of the facts, and gives only a partial statement of the theory altogether misleading.

Now if it was true that Starnes raised the difficulty himself, and suddenly informing defendant that he and defendant and Kendrick could not all live so near each other, and then firing upon defendant while defendant was still sitting, there could be no deliberate intent to kill necessary to constitute murder, while defendant's firing so immediately as not to take time to get up could have been prompted by nothing but the natural resentment and sudden heat engendered by these circumstances, and the homicide committed could have been no more than manslaughter.

The jury, of course, had a right to discard the story detailed by defendant and find on the State's evidence in the exercise of their judgment as to what was the evidence which was worthy of their belief, but my ground of complaint is that this instruction usurped the province of the jury, and left them no room to consider of which

they would believe—in effect telling them that it was immaterial which they believed, the defendant was not acting in self-defense and was guilty of murder. Such instructions are dangerous in the extreme, and in this case probably did lead the jury to their verdict of guilty of murder, and deprived appellant of his right of his crime being found to be manslaughter if the jury should believe his story or have a reasonable doubt of whether it was true.

*T. M. Miller,* Attorney General, for the State.

Instruction numbered four for the prosecution is assailed, and it is said to deny to the defendant the right to have the manslaughter phase of his case considered by the jury.

If the instruction alluded to could by itself possibly be deemed erroneous upon the construction of counsel, such error is completely cured by charge No. 21 for the defense.

This does not conflict with, but only modifies or amplifies the charge for the State complained of.

The two instructions taken together, as they must be, would read in effect as follows : If defendant shot and killed deceased deliberately, while the latter was running away, and while not himself in real or apparent danger, he cannot rely on the plea of self-defense, and the killing would be murder ; still, if the jury have a reasonable doubt whether the killing proceeded from a formed design to take life or from sudden heat of passion caused by defendant being shot at by the deceased a moment before, then (because the killing was neither in fact or apparently necessary) defendant is guilty of manslaughter only.

But I maintain that the charges complained of were correct in themselves, and as applied to the theories of fact announced therein, for it is a fundamental principle of criminal jurisprudence that in order to justify the taking of human life on the plea of self-defense the accused must *at the very time of the killing* have been in real or apparent danger of suffering the loss of his own life, or of great bodily harm at the hands of the deceased. The extent of the indulgence allowed by law to the frailty of human nature is to reduce an *unnecessary* homicide to manslaughter in cases where the conduct of the person slain was calculated to excite and did

excite the passions of the slayer so that reason and judgment may be assumed to have lost their sway.

CAMPBELL, J., delivered the opinion of the court.

The fourth instruction for the State is erroneous. It told the jury to convict of murder even if satisfied that the deceased had an instant before shot at and missed the accused, and that the accused fired the fatal shot instantly upon the deceased turning to run after this attempt on his life. It is true the word " deliberately " is in the instruction, but it is mockery of one shot at by an assailant to speak of his instantly acting deliberately in shooting at his assailant. Deliberation is not in the nature of things predicable of one in that situation. If fear be absent, passion and a spirit of resistance and resentment would be justly aroused and excited by such circumstance, and instantly killing the assailant would be manslaughter at most. The fact that the person shot at and instantly returning the fire and killing his assailant intended to kill and was deliberate enough to do it would not make him guilty of murder. The instruction is not saved from fatal error by the word " deliberately." *State* v. *Hill*, 4 Dev. & Bat. 491, which contains a lucid exposition of the law on this subject by Judge Gaston, to which we subscribe.

The same error is contained in the fifth instruction for the State.

The twenty-first instruction for the accused correctly informed the jury that he should be convicted of manslaughter and not murder if the evidence made it doubtful " whether the killing was pursuant to a premeditated design or from sudden heat of passion aroused by defendant being shot at by deceased." If this could be viewed as a modification of the erroneous instructions for the State it might be held to cure it, but they are antagonistic and irreconcilable, announcing contradictory rules for the guidance of the jury, and leaving it to select between them which it would adopt. But for this error we would affirm the judgment. In view of it we cannot. The accused testified that Starnes shot at him with a rifle and turned to run, and he instantly shot and killed Starnes.

The court by the fourth instruction for the State told the jury this was murder if the accused shot deliberately. We do not know any case sanctioning any such proposition as applied to such circumstances as this case presents. The action of the court in giving the twenty-first instruction for the defendant suggests that the fourth and fifth for the State received the approval of the learned circuit judge, either by inadvertence or by not attaching to them the meaning which we understand the language to import, for it is inconceivable that both could have been approved, but although the judge had correct views of the law, the harm was done the defendant of authorizing his conviction of murder, at the option of the jury, on a state of facts which the law does not adjudge to be murder. The jury may have accepted as true the defendant's account of the killing, and, accepting the fourth instruction for the State as the law of the case, found the accused guilty of murder, which in our opinion is not sanctioned by the law. If the State's theory of the facts is accepted the accused is guilty of murder, but if the killing occurred as he testified, it was not murder certainly.                    *Reversed and remanded for a new trial.*