## WILLIS KELLY *v.* THE STATE.

1. MURDER. *Evidence of malice; when insufficient.*
   Deceased with a friend sought accused to demand an explanation of certain statements supposed to have been made by the latter. Angry words ensued, and the friend struck at accused with a piece of plank two or three feet long, about ten inches wide and one inch thick. Accused wrested it from him and in trying to strike him struck deceased, who interposed to take his friend's part. Deceased then drew back ten or twelve feet, and was stooping as if to pick up something, when accused threw the plank at him, inflicting a fatal wound. *Held,* in the absence of other evidence of malice, a conviction of murder should be set aside.

2. SAME. *Instruction as to malice; when erroneous. Insufficient evidence.*
   Since in such case the evidence excludes the idea of deliberate design, it was error to instruct the jury that if it believed the killing was done with deliberate design to kill, defendant is guilty, even though the design may have been suddenly formed.

FROM the circuit court of Jones county.

HON. A. G. MAYERS, Judge.

The facts are stated in the opinion.

*D. M. Watkins* and *Calhoon & Green,* for appellant.

1. The facts do not warrant a verdict of guilty of murder. The piece of plank cannot be regarded as a deadly weapon when thrown at a person eight or ten feet off. It was a mere casualty that it happened in this case to produce death.

2. Under the facts it was erroneous to submit to the jury the question of malice, and in the instructions to use the word " instantly." *Beasley* v. *State,* 64 Miss. 522.

*T. M. Miller*, attorney-general, for the state.

The second instruction is not subject to the same criticism as the instruction in *Beasley* v. *State.* The effect of the instruction in this case is to tell the jury that malice need not be a long-harbored hatred or revenge, but can be suddenly formed. This proposition of law cannot be disputed, nor can it be disputed as a psychological fact.

COOPER, J., delivered the opinion of the court.

The conviction of the appellant of murder cannot under the facts of this case be sustained. It appears beyond question that the deceased and one Todd sought the appellant, certainly in no friendly spirit, for the purpose at least of having some explanation from him of certain threats he was supposed to have made a few days before to strike a child of the deceased. Todd, it seems, was present when the quarrel with the child occurred, and had reported the same to the deceased, who had accosted the accused on the subject, and, the accused having denied the occurrence, the deceased sought Todd to have him confront the accused. Todd's explanation of what occurred is as follows : " On Saturday, the day of the fight, Hodge came after me to go with him and see Kelly. I said, you did say you would slap the devil out of Charley (Hodge's little boy). Kelly said, you are a liar. I told him you are another. Kelly said, you are a damned liar. I picked up a piece of plank and 'struck at him with it; then he caught it and struck Hodge across the arm with it; then Hodge stooped down to get a piece of plank or something, and Kelly threw the plank at him and struck him ; then I got a piece of scantling and struck Kelly. . . . When Kelly and I were fighting, Hodge was trying to get in between me and Kelly, and Mr. Blackman was trying to keep me back. I don't know what Hodge said to Kelly during the fight. Hodge had no weapon. Kelly jerked the plank out of my hand that he struck Hodge with. It was a piece of plank two or three feet long, about ten inches wide and one inch thick. It was sort of sharp at one end. It was the plank I was striking at Kelly with. Kelly was about ten or twelve feet from Hodge when he struck

him.  Before Kelly and I began to fight Hodge stepped in and said to Kelly : ' You cannot fight him ! he is a cripple ; I will take his place ;' Kelly was at the time advancing on me.  I am bodily crippled, my right leg has been mashed all to pieces.  Hodge, I don't think, attempted to strike ; if so, I did not see it.  When I struck Kelly with the scantling, I think some of the men were holding Hodge.  To the best of my recollection the piece of scantling was about three inches wide, one inch thick, and three feet long.  I said something about getting a gun ; don't recollect saying that I would kill ' the d——d son of a bitch.'  At the time I was fighting, my attention was called to Kelly ; do not know what was going on with outside parties.  If Hodge had anything in his hand, I did not see it."

There is some conflict of testimony between the witnesses for the state, some between those for the defense, and some between those for the state on the one hand, and those for the defense on the other.  But the whole evidence establishes, beyond controversy, the facts that Hodge and Todd sought Kelly, and that the difficulty arose from the fact that he was then charged with having on a previous occasion made a threat to slap the little son of Hodge.  It is not to be doubted on the evidence that Todd then assaulted Kelly with a piece of plank, that Kelly seized it and struck at Todd, and that Hodge interposed his arm to prevent Todd being struck and said to Kelly, either that he would take Todd's place, or that Kelly should not strike Todd ; that Hodge then turned aside and stooped as though to pick up something, and that Kelly then threw at him, either the plank he had wrested from Todd or another piece of about the same length and thickness, but eight or ten inches wide.

By the first instruction for the state the court submitted to the jury whether the piece of plank thrown by Kelly at Hodge was a deadly weapon and informed them that if they should so believe, then it was *prima facie* malice and an intention to murder, and, if the jury believed that the killing was done with a deliberate design to effect death, the defendant was guilty, even though said design may have been suddenly formed.

We are not prepared to say that the court should have submitted to the jury the question whether the piece-of plank thrown by the accused at deceased at a distance of ten or twelve feet was a deadly weapon, the use of which would under other circumstances have given rise to a presumption of malice necessary to constitute murder. That death resulted from its use, does not necessarily show the instrument to have been lethal. The question always is whether the weapon used as it was would likely produce death or great bodily harm. A single blow in hot blood, and that given by throwing and not by striking, with a piece of plank such as that described by the witnesses, would under ordinary circumstances scarcely, if at all, support a verdict of malicious killing, no other evidence of malice appearing. But it is wholly insufficient when, as in this case, it is unquestionably shown that the accused had instantly before been assailed with the same or a similar weapon held in the hands of his opponent, and immediately afterwards, and in the same difficulty, threw it at one apparently acting or purposing to act in concert with such assailant.

As was said in the case of *Beasley* v. *The State*, 64 Miss. 518, " It is true the word ' deliberately' is in the instruction, but it is mockery of one shot at by an assailant to speak of his instantly acting deliberately in shooting at his assailant. Deliberation is not in the nature of things predicable of one in that situation. If fear be absent, passion and a spirit of resistance and resentment would be justly aroused and excited by such circumstance, and instantly killing the assailant would be manslaughter, at most."

These remarks, *mutatis mutandis*, are applicable to the case before us.

*The judgment is reversed, and a new trial awarded.*